IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAULA A. MENDOZA,                          )
                                           )
                Plaintiff,                 )
                                           )
        v.                                 )      No. 02 C 8005
                                           )
MICRO ELECTRONICS, INC., and               )      Judge Mark Filip
MICRO CENTER SALES CORP., d/b/a            )
MICRO CENTER, CMSC, MEI,                   )
WINBOOK and MICRO ELECTRONICS,             )
INC., a corporation,                       )
                                           )
                Defendants.                )

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Paula Mendoza ("Plaintiff" or "Mendoza") filed this lawsuit against Micro

Center Sales Corporation ("Defendant" or "Micro Center"[1]) alleging violations of the Family and

Medical Leave Act, 29 U.S.C. § 2061, *et seq.* ("FMLA"), and Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), stemming from the termination of her employment

by Micro Center. Mendoza claims that she is entitled to recovery under the FMLA because

Micro Center terminated her before her twelve-week FMLA unpaid leave period ended (Count I).

She also claims that Micro Center discriminated against her in violation of Title VII because

Mendoza's sex was a motivating factor in its decision to terminate her (Count II). This case is

before the Court on Micro Center's Motion for Summary Judgment ("Motion") (D.E. 25) and

---

[1] Although the caption of this case refers to multiple defendants, both parties in their
briefs treat the case as if it only involves the Plaintiff and a Defendant, typically referred to as
"Micro Center." (*See, e.g.,* Docket Entry (hereinafter "D.E.") 25 at 1 (defense memorandum
referencing "Micro Center" and the "defendant"); D.E. 33 at 1 (Plaintiff's memorandum
referencing the "Defendant").) This opinion follows the parties' convention.

Plaintiff's Motion for [Partial] Summary Judgment ("Cross-Motion") (D.E. 28). For the reasons stated below, Defendant's Motion is denied with respect to Count I and granted with respect to Count II. Plaintiff's Cross-Motion is denied.

BACKGROUND[2]

Micro Center operates a chain of retail computer stores, including store number 151, which is located at 2645 North Elston Avenue in Chicago, Illinois. (Def. SF ¶ 2.) Mendoza began employment at Micro Center's store number 151 on December 2, 1996, as a Cash Office Clerk, and on August 27, 2000, Mendoza became a Front End Supervisor. (*Id.* ¶ 3.) Micro Center has adopted policies for leaves of absences for its employees which are set forth in an Employee Handbook. (*Id.* ¶ 9; *see* Def. Ex. 2 at Bates No. MC 25-30.) A qualified employee is eligible to take up to twelve weeks of unpaid FMLA leave in a rolling twelve-month period. (Def. SF ¶ 10.) A qualified employee is also eligible to take up to four weeks of personal leave in a rolling twelve-month period, subject to management approval. (*Id.* ¶ 11.) Micro Center

---

[2] The Court takes the relevant facts from Micro Center's Statement of Facts ("Def. SF') (D.E. 25); Plaintiff's Response to Micro Center's Statement of Facts ("Pl. Resp. to Def. SF"), which includes Mendoza's Local Rule 56.1(b)(3)(B) Additional Statement of Facts ("Pl. SAF") (D.E. 32); Plaintiff's Statement of Fact [sic] In Support of Her Motion Partial [sic] for Summary Judgment ("Pl. SF") (D.E. 30); and Micro Center's Combined Response to Plaintiff's Local Rule 56.1(a) and 56.1(b) Statements of Facts (D.E. 41), which includes a Response to Plaintiff's 56.1(a) Statement ("Def. Resp. to Pl. SF"), a Response to Plaintiff's 56.1(b)(3)(B) Statement ("Def. Resp. to Pl. SAF"), and a Statement of Additional Facts ("Def. SAF"). Plaintiff has not filed a reply brief, or a response to Defendant's Statement of Additional Facts, in support of her Cross-Motion. Where the parties disagree over relevant facts, the Court sets forth the competing versions. In addition, the Court, as it must, resolves genuine factual ambiguities in the respective non-movant's favor. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). Where a party fails to properly support its denial of a statement (or fails to respond at all), and that statement is properly supported in the record, the Court deems it admitted. Local Rule 56.1(a); *accord, e.g., McGuire v. United Parcel Serv.*, 152 F.3d 673, 675 (7th Cir. 1998); *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000).

policy requires that employees returning from FMLA leave contact their supervisor at least seven days prior to the expiration of the leave to make arrangements for their return to work. (*Id.* ¶ 12.) If the FMLA leave was for the employee's own serious health condition, Micro Center policy requires the employee to provide a doctor's statement indicating that the employee is able to return to work in the position he or she held when the leave began. (*Id.* ¶ 13.) Micro Center policy does not allow employees to extend their FMLA leave beyond twelve weeks. (*Id.* ¶ 14.)

On October 12, 2001, Mendoza left work early due to complications related to her pregnancy. (Def. SF ¶ 19; Pl. SAF ¶ 2.) On October 17, 2001, Mendoza's physician put Mendoza on bed-rest and prohibited her from working "until further notice." (Def. SF ¶ 20.) On that day, Mendoza informed Micro Center store management that she would be unable to work until at least October 24, 2001, the date of her next scheduled doctor's appointment. (*Id.* ¶ 21.) Because she was going to be absent for more than 3 days, Micro Center, per its policy, put Mendoza on FMLA leave beginning October 13, 2001, which would have been her next scheduled work day. (*Id.* ¶ 22.) On October 18, 2001, Layda Cardoso-Duris, who at the time was the Human Resources Manager at store number 151, contacted Mendoza by telephone to discuss her FMLA leave, including topics documented on a "Leave of Absence (LOA) Checklist."[3] (*Id.* ¶ 23.) On October 24, 2001, Mendoza's physician determined that she was still

---

[3] Defendant states that Cardoso-Duris informed Mendoza that the Human Resources Department at Micro Center's home office in Columbus, Ohio, would confirm the total leave for which Mendoza was eligible, taking previous time off into consideration. (Def. SF ¶ 24.) Plaintiff denies this assertion by citing to testimony by Mendoza that she did not recall whether Cardoso-Duris made such a statement. (Pl. Resp. to Def. SF ¶ 24.) The record support from Defendant's Statement of Facts does not support the position that Cardoso-Duris actually made the asserted representation to Mendoza. Defendant cites to the LOA Checklist, which includes a hand-written notation, "HOHR will confirm total elig by law" (Def. Ex. 7), and Cardoso-Duris's deposition testimony (Def. Ex. B at 14-15). The deposition testimony cited supports only that it

3

unable to perform work of any kind and ordered that she remain confined on modified bed rest until further notice. (*Id.* ¶ 25.) The doctor completed two forms—an FMLA Certification of Health Care Provider and an Attending Physician Statement form—indicating that Mendoza was unable to return to work and that the date she could return was unknown. (*Id.*) On October 24, 2001, Mendoza signed a leave of absence request form indicating that her return date was unknown, apparently pending her doctor's release. (*Id.* ¶ 26; Pl. Resp. to Def. SF ¶ 26.) Mendoza testified that she understood that she needed a doctor's release to return to work from FMLA leave for Micro Center's "security purposes" (unexplained). (Def. SF ¶ 27; Pl. Resp. to Def. SF ¶ 27.)

Micro Center's home office calculated Mendoza's FMLA leave period. (Def. SF ¶ 28.) Micro Center initially considered a leave of absence Mendoza had taken to attend a funeral from May 7 through May 12, 2001, as part of Mendoza's FMLA unpaid leave entitlement and therefore included this leave in calculating the date that her leave would expire. (*Id.*) On November 2, 2001, Micro Center's Human Resources Department sent Mendoza a letter that stated, "You have previously taken one week of FMLA leave from 5/7/01-5/12/01, therefore you now have 11 of the 12 weeks of the allowed FMLA leave time available to use. Your 11 week FMLA period ends on December 31, 2001." (*Id.* ¶ 29.) As described below, this calculation was a mistake.

Cardoso-Duris spoke with Mendoza three to four times during Mendoza's FMLA leave

_____

was not Cardoso-Duris's job to do such a calculation of leave-eligibility; it does not support that this fact was told to Mendoza during the call. Thus, to the extent it is relevant, there is no evidentiary support for the fact that Mendoza was informed on October 18, 2001 that her total leave would be confirmed at a later date because it was not Cardoso-Duris's job to calculate it.

regarding her medical condition and when she would be available to return to work. (Pl. SF ¶ 12.) Cardoso-Duris told Mendoza that if she did not return to work on January 1, Micro Center would have to terminate her employment. (*Id.* ¶ 14.)

Mendoza gave birth on January 1, 2002. (Def. SF ¶ 30.) Mendoza states that she called Micro Center on January 2 regarding returning to work, and she was told to speak with Cardoso-Duris. (Pl. Resp. to Def. SF ¶ 31.) Mendoza spoke with Cardoso-Duris on January 4 about when Mendoza would be able to return to work. (Def. SF ¶ 30.) Precisely what was said during this conversation is disputed. Cardoso-Duris testified in her deposition that "[Mendoza] told me she would be able to return to work in six to eight weeks." (*Id.*; Def. Ex. B at 94.) Mendoza testified as follows regarding the January 4 conversation:

> [Cardoso-Duris] told me that I would be able – would I be able to return back in six weeks, and I said sure. I mean I just had a baby. I already had four other pregnancies before. This would have been my fifth, and I was a pro. I could have – I was ready to go back to work, but she said six weeks, and I said sure, no problem. I mean I never told her I couldn't come back to work.[4]

(Pl. Resp. to Def. SF ¶ 31; Pl. Ex. A at 21.) When asked specifically whether she ever told Cardoso-Duris that she was not able to return to work for another six weeks, Mendoza answered, "No." (*Id.*)

Because Mendoza was unable to return to work on or by December 31, 2001, Cardoso-Duris informed Mendoza on January 4, 2002, that Micro Center would process her paperwork terminating her employment and that Mendoza would have to reapply when she was able to return to work. (Def. SF ¶ 32; Pl. SF ¶¶ 16, 17; Def. Resp. to Pl. SAF ¶ 4.) Also during the

---

[4] The same portion of this conversation was described by Mendoza in different ways, as described below.

January 4 phone call, Cardoso-Duris encouraged Mendoza to reapply to Micro Center, and further informed Mendoza that if she were to reapply and be rehired within one year of termination, Mendoza would resume benefits she previously earned.[5] (Def. SF ¶ 33.)

Cardoso-Duris processed Mendoza's termination on January 4. (Def. SF ¶ 35.) It was considered a voluntary termination, and Mendoza was eligible for rehire. (*Id.* ¶ 36.)

Mendoza contacted Micro Center on January 8, 2002, to complain about comments that she was told her former supervisor had made to a group of Micro Center employees. (Def. SF ¶ 39.) These comments apparently related to Mendoza not being able to allowed to return to work. (Pl. SF ¶ 21.) Micro Center investigated this complaint and was unable to substantiate

---

[5] At one point, Mendoza attempts to deny that "she would have been rehired and get the same seniority if she had reapplied" and had been hired within one year of her termination. (Pl. Resp. to Def. SF ¶ 33.) This denial is inconsistent with Mendoza's concession to such a fact in another portion of the briefing concerning the factual record. (*See* D.E. 32 ¶ 51 (Plaintiff effectively conceding that "Micro Center employees who are rehired within one year of their termination date are entitled to the same salary, benefits, and seniority that they had as of the termination date.").) Given Mendoza's concession, her challenge to Def. SF ¶ 33 is likely of only academic significance. Nonetheless, as to Def. SF ¶ 33, the Court finds Mendoza's challenge to be ill-founded. In this regard, Mendoza cites to deposition testimony (although she does not give specific line numbers) by Ms. Cardoso-Duris which states that "she [Mendoza] would not be eligible for the same seniority." (Pl. Ex. B at 124.) However, the page prior to the deposition testimony which Mendoza cites makes clear that Cardoso-Duris was answering a materially different question than the one at issue here—namely, if Mendoza were to apply for employment "tomorrow" (*i.e.*, on February 13, 2004), would she be eligible for the same seniority and benefits. (*Id.* at 123.) (Plaintiff's Ex. B at 123 references February 13 without providing a year for the Cardoso-Duris deposition, but the remainder of the record makes clear that the deposition took place in February 2004, as discovery did not open until October 2003 and closed by the summer of 2004.) Moreover, Ms. Cardoso-Duris's testimony is unequivocal that if Mendoza had reapplied and been hired within one year of January 5, 2002, should would have received the same seniority and benefits. (Pl. Ex. B. at 124-25; *see also* Def. SF ¶ 51 & Def. Ex. 15.) Thus, Mendoza's denial is not properly supported, and Defendant's statement is deemed admitted for summary judgment purposes.

6

Mendoza's allegations.[6] (Def. SF ¶ 40.)

At some point between January 8 and 24, Micro Center discovered that it had miscalculated Mendoza's FMLA leave, apparently because it incorrectly counted the days she took for the funeral as FMLA leave. (*Id.* ¶ 41; Def. Ex. B (Cardoso-Duris Dep.) at 110.) Mendoza's FMLA leave actually expired on January 5, 2002. (Pl. SF ¶ 10.) At some point after January 8, 2002,[7] Micro Center sent Mendoza a revised copy of the November 2, 2001,

---

[6] Although neither party makes anything of this issue in its briefs, in their papers concerning the factual record, Mendoza attempts to deny this statement by citing to Micro Center's internal memo describing the results of the investigation. She states that "Micro Center found credible evidence to support Mendoza's complaint," pointing to the fact that one employee apparently confirmed that she overheard the comments made by Mendoza's supervisor and that Micro Center informed Mendoza that "appropriate action was taken to address her concerns." (Pl. Resp. to Def. SF ¶ 40; *see* Def. Ex. 16 at Bates No. MC 849, 851.) While it is true that one employee confirmed the alleged comments, Mendoza's characterization that this was "credible evidence" is belied by the conclusion that the "alleged witnesses were unable to corroborate the allegations and in many cases, were not credible or forthright." (Def. Ex. 16 at Bates No. MC 852.) And Mendoza's denial is not supported by the "appropriate action," which apparently consisted of speaking with employees about being careful with their conversations. (*Id.*) Neither of these supports a denial that Micro Center was unable to substantiate Mendoza's allegations.

[7] Micro Center states that the revised letter was sent "on or about January 24, 2002." (Def. SF ¶ 42.) Mendoza attempts to deny that the revised copy was sent on that date by stating that "[t]he revised copy of the first November 2, 2001 letter was sent on November 2, 2001." (Pl. Resp. to Def. SF ¶ 42.) Both parties cite to the revised letter itself as support. The letter is dated November 2, 2001, but it states "REVISED" on it and clearly is a near-verbatim reissue (except for the revision changing the identified FMLA leave termination date from December 31, 2001, to January 5, 2004) of an original letter the parties agree was sent on November 2, 2002. (*See* Def. SF ¶ 29; Pl. Resp. to Def. SF ¶ 29.) There is no support in the revised letter (Def. Ex. 18) as to when the letter actually was sent. Ms. Cardoso-Duris has offered unrebutted testimony that Micro Center did not realize its mistake concerning the FMLA termination date until sometime between January 8 and January 24. (*See* D.E. 42 at 5 (citing Def. Ex. I (Cardoso-Duris Dep.) at 109-110).) Micro Center also cites Mendoza's deposition testimony, which, while convoluted, appears to indicate (consistent with her complaint, which speaks directly and clearly to the issue) that Mendoza received the second letter in late January 2002. (*See* D.E. 42 at 4-5 (citing Def. Ex. H (Mendoza Dep.) at 71-74); *see also* D.E. 1 (Compl.) ¶¶ 20, 25 (respectively asserting that first letter was sent on "November 2, 2001," and the second, revised letter was received by Plaintiff "[i]n late January of 2002 . . . in a Micro Center's envelope postmarked

7

memorandum revising her termination date from December 31, 2001, to January 5, 2002.[8] (Def. SF ¶¶ 41, 42; *see* Def. Ex. 18.)

Micro Center maintained Mendoza's benefits coverage through January 5, 2002. (Def. SAF ¶ 7.) Mendoza collected short-term disability benefits from October 24, 2001, to January 22, 2002, which was the maximum benefit period. (Def. SF ¶ 53.) She collected long-term disability benefits from January 23 to February 11, 2002. (*Id.* ¶ 54.) Long-term disability is available to "disabled" employees, which is defined by Micro Center's plan as the claimant being limited or unable to perform the material and substantial duties of the claimant's regular occupation. (*Id.* ¶ 53.) Mendoza was directed to contact the insurer immediately if she was able to return to work in any capacity. (*Id.* ¶ 57.) She never informed the insurer that she was no longer disabled at any time prior to February 11, 2002. (*Id.*)

Mendoza filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 1, 2002. (Def. SF ¶ 4.) The EEOC issued a right to sue letter on September 19, 2002. (*Id.* ¶ 5.) Mendoza filed this action on November 7, 2002.

---

January 23, 2002.").) Although the Court need not resolve the specific date to conclude that summary judgment on the FMLA claim is properly denied, the Court concludes that there is no reasonable dispute concerning that the second letter was sent some time at least after January 8, 2002.

[8] Mendoza apparently attempts to deny that Micro Center was not aware of its miscalculation until January 8, at the earliest, by stating that "[w]hen Micro Center sent the first letter [November 2, 2001] to Mendoza, Mendoza called Cardoso-Duris and reminded her that she had until January 5, 2002, to complete her medical leave." (Pl. Resp. to Def. SF ¶ 41.) There is no support in the record for this denial. The deposition testimony to which Mendoza cites specifically states that she could not remember when she told Cardoso-Duris that she thought she had until January 5. (Pl. Ex. A at 70.) Mendoza could not even narrow it down to before or after January 4, the date she was informed she was being terminated. (*Id.*)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## DISCUSSION

Micro Center moves for summary judgment on the following grounds: (1) Mendoza could not have returned to work on January 6, 2002, so terminating her on January 4, 2002, a day before her leave expired, is not an actionable violation of the FMLA; and (2) Mendoza's Title VII claim fails because she cannot establish a *prima facie* case and because she has no evidence that Micro Center's stated reason for Mendoza's discharge was pretextual. Plaintiff moves for summary judgment on the FMLA count on the grounds that Micro Center has admitted it terminated Mendoza before her FMLA leave ended, and thus, there is no genuine issue of material fact as to whether she is entitled to recover.

9

I.    Count I — the FMLA Claim

The FMLA provides that an eligible employee must be allowed to take up to twelve work weeks of unpaid leave during any twelve-month period because of, *inter alia*, a serious health condition that prevents the employee from performing his or her job. *See* 29 U.S.C. § 2612(a)(1)(D). Any employee who takes FMLA leave is entitled to be restored by the employer to the position held when the leave began or to an equivalent position. *See* 29 U.S.C. § 2614(a)(1)(A) and (B). There is no dispute in this case that Mendoza was entitled to twelve weeks of leave for the complications she suffered during her pregnancy. Nor is there any dispute that when correctly calculated, Mendoza's FMLA leave should have expired on January 5, 2002, rather than December 31, 2001, as she was initially informed. The sole question remaining on this count is whether Micro Center processing Mendoza's termination on January 4 (back dated to December 31) is an actionable violation of Mendoza's rights under the FMLA.

Mendoza argues that the early termination is a clear violation of the FMLA, the intent of the employer is irrelevant, and she is thus entitled to summary judgment. (D.E. 29 (Mem. of Law in Support of Cross-Motion) at 4.) Defendant argues, to the contrary, that Mendoza was not ready to return to work on January 6 (the day after her leave ended), and thus her right to reinstatement was not violated. (D.E. 25 (Mem. of Law in Support of Motion) at 4.) The Court finds, as explained below, that there is a triable question of fact as to whether Mendoza's right to reinstatement under the FMLA was violated because there is an issue of fact as to whether she could and would have returned to work on January 6, 2002.

Numerous federal courts have held that an employee's rights under the FMLA were not violated when, although the employee may have been terminated from unpaid leave before the

10

end of the FMLA period, there was no dispute that the employee would not have been able to return or would not have returned to work at the end of the leave period. For example, in *Reynolds v. Phillips & Temro Industries, Inc.*, 195 F.3d 411 (8th Cir. 1999), the Eighth Circuit analyzed a case where a plaintiff suffered a debilitating injury to his back from a car accident. The plaintiff had been a shipping attendant, which required him to lift loads of up to 100 pounds and to be on his feet all day. *See id.* at 412. He was terminated 10 days after his accident pursuant to company policy because of absences. *See id.* In the months after his accident, the plaintiff's doctor certified that he had a continuing disability, ultimately concluding that he could never lift or carry over 75 pounds and could only occasionally lift or carry 51 to 74 pounds. *See id.* at 413.

The Eighth Circuit held that the defendant-company was entitled to summary judgment on the plaintiff's FMLA claim, notwithstanding the plaintiff's contention that the company failed to credit an excused absence form concerning the absences that prompted the plaintiff's termination, because the record conclusively established that the plaintiff could not have performed his job at the end of twelve weeks of unpaid FMLA leave had it been provided to him. *See Reynolds*, 195 F.3d at 414. The court rejected the plaintiff's assertion that he was ready, willing, and able to return to his job within the time period his FMLA leave was due, relying, *inter alia*, on the fact that over one year after the accident, the plaintiff was still on lifting restrictions that precluded his performing the essential functions of the job from which he was fired. *See id.* In *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775 (6th Cir. 1998), the Sixth Circuit reached a similar conclusion. *See id.* at 784-85 (even if plaintiff was terminated during twelve-week leave period, no FMLA violation where it was "undisputed that

11

on [the date the leave ended], Cehrs was still unable to work"). A number of district courts, including this one, have also held that a termination during the FMLA leave period is not an actionable violation where the plaintiff could not have returned to work. *See, e.g.*, *Strykowski v. Rush N. Shore Med. Ctr.*, No. 02 C 778, 2003 WL 21788987, at *6-7 (N.D. Ill. July 30, 2003) (Manning, J.); *Roberson v. Cendant Travel Servs., Inc.*, 252 F. Supp. 2d 573, 580-81 (M.D. Tenn. 2002); *Soodman v. Wildman, Harrold, Allen & Dixon*, No. 95 C 3834, 1997 WL 106257, at *8 (N.D. Ill. Feb. 10, 1997) (Lefkow, M.J.).

Notwithstanding this substantial body of authority, the teaching of these cases does not support Defendant's position that it is entitled to summary judgment as a matter of law on the record as it has been presented. In each of the cited cases, the court found that the "record overwhelmingly support[ed] the conclusion that the Plaintiff was not able to return to work at the end of her FMLA leave," *Roberson*, 252 F. Supp. 2d at 579, or that the plaintiff "was physically *unable* to work" until after her leave expired, *Soodman*, 1997 WL 106257, at *8 (emphasis added). *See also Strykowski*, 2003 WL 21788987, at *7 (plaintiff could not perform essential functions of respiratory therapist position at end of FMLA leave where plaintiff's doctor stated that he could not lift more than 10 pounds or stand for a prolonged period of time); *Holmes v. e.spire Communications, Inc.*, 135 F. Supp. 2d 657, 665-66 (D. Md. 2001) (plaintiff's argument that she could have returned to work was"flatly contradicted by the evidence," including plaintiff's own testimony).

Here, the record does not clearly support the conclusion that Mendoza was not able to return on January 6, 2002. As Plaintiff points out, in her deposition, she flatly denied telling Micro Center that she could not return to work for another six weeks after her child was born.

12

(*See* D.E. 31, Pl. Ex. A at 21.) She also stated that she would have returned to work on January 6, 2002, if that was what she understood was necessary to keep her job. (*See id.*)

Defendant contends that Mendoza, in her deposition, conceded that she could not return for six weeks, but one might reasonably construe Mendoza's testimony as merely indicating that she assented to a six-week return when Cardoso-Duris suggested that timeframe. For example, Mendoza testified:

> I told her that I, you know, wanted to be able to come back to work. And she said, Well, when do you think you can come back to work. I said, Well you know I don't know. You know, I just want to come back to work. She said, well, usually it's about six weeks. I said, Yeah, I guess.

(Def. SAF ¶ 1; Def. Ex. H (Mendoza Dep.) at 84.) Mendoza further stated, "I informed Layda [Cardoso-Duris] that I wanted to return back to work and what would I need to do that. And she told me, 'well, you need a doctor's note. And what is it, usually what about six weeks?' And I said, 'Yes.'" (Def. SAF ¶ 2; Def. Ex. H at 89.)[9] In light of Mendoza's testimony that she would have been able to return to Micro Center on January 6, if she had been asked to do so (*see* Pl. Ex. A at 21), the Court finds that there is a triable issue of fact as to whether she was able to return to work at the end of her FMLA leave. *See Viereck v. City of Gloucester City*, 961 F. Supp. 703, 709 (D. N.J. 1997) (whether FMLA plaintiff would have returned to work two days early to save her job, on record in that case, was a "factual inquiry on which the record is not free from doubt").

---

[9] The same is true of Mendoza's statement in her EEOC charge that "I informed [Micro Center] that I would be able to return in six weeks." (Def. Ex. A.) Even if this is a binding judicial statement, as Defendant argues, it does not unequivocally state that Mendoza could not return to work *until* six weeks from January 4, at least when read in light of the other evidence in the record.

The Court respectfully rejects Defendant's argument that Mendoza's testimony is insufficient to preclude summary judgment. (*See* D.E. 25 at 6-7.) Defendant's principal contention, that "self-serving deposition testimony, without corroborating evidence, is simply insufficient to create a genuine issue of material fact," (*Id.* at 7), simply cannot be squared with Seventh Circuit precedent and the record in this case. At trial, Defendant may be able to use its proffered arguments so as to impeach Mendoza's sworn trial testimony—for example, with the fact that Mendoza drew disability benefits following the pregnancy through February 11, 2002.[10] Micro Center also points to the fact that Mendoza indisputably never reapplied for her old job or for any position at Micro Center after she stopped receiving disability payments in February 2002. Such evidence may cut against her testimony at trial that she was ready and able to return to work on January 6, but it is insufficient to warrant summary judgment for Defendant. *See also Fliss v. Movado Group, Inc.*, No. 98 C 3383, 2000 WL 1154633, at *5 (N.D. Ill. Aug. 14, 2000) (Ashman, M.J.) (holding that judicial estoppel was not appropriate in an ADA claim where plaintiff made unsworn statements to long-term disability insurer that contradicted plaintiff's position that she was able to work); *id.* ("Plaintiff's unsworn statements and representations, while perhaps affecting Plaintiff's credibility, will not be considered in the judicial-estoppel analysis.").[11]

---

[10] Defendant offers no evidence or argument that Mendoza ever made any sworn statements about her disability in connection with drawing the short-term and long-term disability benefits in January and February 2002.

[11] *Fliss v. Movado* is one of a number of cases to apply the Supreme Court's decision in *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), which held that in ADA cases where a plaintiff is faced with his "previous *sworn* testimony asserting 'total disability' or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim." *Id.* at 806 (emphasis added). This Court searched for and found no

14

In sum, there are material factual disputes concerning the FMLA claim. Precedent teaches that a plaintiff will not prevail on a FMLA claim if she was fired before her unpaid leave ended but otherwise could not have or would not have returned to work at the end of her FMLA leave. At the same time, it is unclear whether Plaintiff actually could have and would have returned to Micro Center if she knew she needed to do so. Thus, Defendant's Motion and Plaintiff's Cross-Motion as to Count I are both denied because there is a triable issue of fact as to whether Mendoza could have and would have returned to work on January 6, 2002, had she been informed that she needed to do so to keep her job at Micro Center.[12]

---

cases where a court applied *Cleveland* to unsworn statements, thereby requiring a plaintiff to explain any apparent inconsistency between such unsworn statement and testimony in order to survive summary judgment. *See also Giles v. Gen. Elec. Co.*, 245 F.3d 474, 484 n.14 (5th Cir. 2003) (declining to decide whether inconsistent unsworn statement in private disability benefits application might form basis for summary judgment); *Reynolds*, 195 F.3d at 414 n.4 (declining to decide whether *Cleveland* applies in FMLA case where plaintiff made prior unsworn representations that he was unable to perform normal occupation). General Seventh Circuit precedent precludes a litigant from attempting to evade summary judgment by contradicting prior sworn testimony, *see, e.g., Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996) (collecting cases), but Defendant offers no authority that the rule applies to unsworn prior statements.

[12] In concluding that summary disposition is inappropriate on the record presented, the Court respectfully rejects Plaintiff's assertion that dicta in the earlier opinion in this case, *Mendoza v. Micro Electronics, Inc.*, No. 02 C 8005 (Gottschall, J.), dictates that Mendoza is entitled to judgment as a matter of law. To the extent that dicta in that earlier opinion, which rejected the Defendant's contention that the case should be dismissed under Rule 12(b)(6), arguably spoke to FMLA liability, it is clear from the earlier opinion that the parties failed to present significant authorities bearing on the question of whether a plaintiff can recover under the FMLA if it is established that the plaintiff cannot or will not return to work after the expiration of the FMLA period. District court opinions concerning motions to dismiss do not necessarily control when the case proceeds to summary judgment, at least where issues were not the subject of meaningful or thorough adversarial briefing in the first instance. *See, e.g., Figeroa v. City of Chicago*, No. 97 C 8861, 2000 WL 283080, at *5 (N.D. Ill. Mar. 3, 2000) (Shadur, J.) (citing, *inter alia, Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1227-28 (7th Cir. 1995), and *Cameo Convalescent Ctr., Inc. v. Percy*, 800 F.2d 108, 110 (7th Cir. 1986)).

II.     Count II — the Title VII Claim

Title VII makes it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).[13] Mendoza offers no direct evidence of discrimination, so she must proceed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Mendoza states that, to establish a *prima facie* case of discrimination, she must put forth evidence: "(1) that she is a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she experienced an adverse employment action; and (4) that similarly situated individuals were treated more favorably." (D.E. 33 (Pl.'s Mem. of Law in Resp. to Motion) at 7-8 (collecting cases)); *accord Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004). As Mendoza acknowledges, if she presents a *prima facie* case, the burden shifts to Micro Center "to articulate a legitimate, nondiscriminatory reason for the action taken against the plaintiff." (D.E. 33 at 8). After Micro Center has proffered a legitimate reason, the inference of discrimination disappears, and to survive summary judgment, Mendoza must demonstrate that there is an issue of triable fact as to whether Micro Center's proffered reason was a pretext for intentional discrimination. *See id.* The ultimate burden to prove intentional discrimination remains with Mendoza. *See Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1005 (7th

---

[13] "The phrase 'because of sex' has been defined by the Pregnancy Discrimination Act (PDA), through which Congress amended Title VII in 1978, to include 'because of or on the basis of pregnancy, childbirth, or related medical conditions.'" *Venturelli v. ARC Cmty. Servs., Inc.*, 350 F.3d 592, 598 (7th Cir. 2003) (citing 42 U.S.C. § 2000e(k)).

Cir. 2001)

A.    Mendoza Has Failed to Identify A Similarly Situated Employee

Micro Center does not contest that Mendoza has established the first three prongs of a *prima facie* case. Micro Center argues, rather, that Mendoza has not presented evidence that any similarly situated employee was treated more favorably than she. "A similarly situated employee is one who is 'directly comparable to the plaintiff in all material respects.'" *Rogers v. City of Chicago*, 320 F.3d 748, 755 (7th Cir. 2003) (quoting *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002)) (alteration omitted); *accord, e.g.*, *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618-19 (7th Cir. 2000) (showing substantial similarity of comparator "normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them").

Mendoza points to one employee as purportedly being similarly situated to her: Joe Centeno. She argues that Centeno, like her, was a department supervisor, but unlike her, he was allowed to return to work after taking more than twelve weeks of FMLA leave. (D.E. 29 (Mem. of Law in Support of Cross-Motion) at 8; *see also* Def. SF ¶ 64.) Micro Center argues, however, that Centeno did not take more than twelve weeks of FMLA leave, and also was not drawing disability payments after such leave ended, and therefore he is not similarly situated to Mendoza.

The Court respectfully rejects Mendoza's argument (*see* D.E. 33 at 8-9) that Centeno has been shown to be a comparator. As a threshold matter, Mendoza does not contend that Centeno was drawing disability payments (Mendoza drew both short-term and long-term disability) after the conclusion of his unpaid FMLA leave. Such a factor might reasonably bear on an employer's

17

assessment of two otherwise-similar employees who have been absent on leave and on whether the employer believes such an employee should be retained for the present time or let go in favor of other options. As a result, it appears that Centeno is not similarly situated in all material respects for purposes of evaluating the employer's treatment of the two individuals. *See, e.g., Rogers*, 320 F.3d at 755.

In addition, and independently, Mendoza does not adduce sufficient facts to create a meaningful factual dispute concerning Centeno's return date. Mendoza's only proffered "evidence" in support of her contention that Centeno took more than twelve weeks of leave is her deposition testimony. She testified, "I just know as an employee working there he wasn't on the schedule for a numerous amount of months." (Def. Ex. C (Mendoza Dep.) at 14; *see also id.* at 157-58 ("He's on the supervisor's schedule, and I'm on the supervisor's schedule. He was gone for a long time. . . . He was gone for more than three months though.").) In response, Micro Center provides a comprehensive written job history record for Centeno that lists the leaves of absence he took while employed by Micro Center. It demonstrates that Centeno took only one FMLA leave during the time Mendoza worked at Micro Center. (Def. SF ¶ 61; Def. Ex. 26.) That leave began on February 11, 1998, and ended when he returned to work March 1, 1998. (*Id.*) The record also indicates that Centeno took a twelve-week leave from July 28, 2002, to October 20, 2002, when Mendoza no longer worked at Micro Center, which Micro Center says was also FMLA leave. (Def. SF ¶ 62; Def. Ex. 26 & 27.) Centeno took a separate personal leave of absence from January 29, 2003, until February 8, 2003. (Def. SF ¶ 63; Def. Ex. 26; Def. Ex. B

18

(Cardoso-Duris Dep.) at 61-64.)[14]

Micro Center argues, correctly, that Mendoza's deposition testimony that she "just knew" Centeno took more than twelve weeks of leave is not enough to preclude summary judgment. She provides no specifics as to the dates of Centeno's allegedly excessive leave or her basis for asserting—in conclusory fashion—that he was out more than three months. Mendoza offers no argument or legal authority that would contradict the Seventh Circuit's repeated instruction that "[c]onclusory allegations, unsupported by specific facts, will not suffice" to defeat summary judgment. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003); *see also Hildebrandt v. Ill. Dept. of Natural Res.*, 347 F.3d 1014, 1036 (7th Cir. 2003) (quoting *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989)) ("'[B]are allegations not supported by specific facts are insufficient in opposing a motion for summary judgment.'"). *Holmes v. e.spire Communications, Inc.*, 135 F. Supp. 2d 657 (D. Md. 2001), specifically addressed this type of situation and rejected similar conclusory assertions. *See id.* at 663. ("Plaintiff cannot demonstrate a dispute as to a genuine issue of fact [whether comparator was out more than twelve weeks] by simply setting forth unsubstantiated speculation and allegations.").) On this record, Mendoza has failed to adduce sufficient evidence to contradict Micro Center's employment documents showing that Centeno's two FMLA leaves were twelve weeks or less,

_____

[14] Micro Center provided additional, largely cumulative, factual support concerning Centeno via an affidavit attached to its Response to Plaintiff's Cross-Motion/Reply concerning its Motion (D.E. 42, Ex. J). Plaintiff has not filed any reply to Micro Center's brief (nor filed any response to Defendant's Statement of Additional Facts (D.E. 41)), so Plaintiff has waived any objections to the affidavit. That affidavit is largely cumulative of prior evidence, and certainly is not outcome-determinative concerning the record on the Title VII claim, but it serves to reinforce that there is no reasonable dispute regarding that Centeno was not allowed to take more than 12 weeks of FMLA leave.

and therefore, Centeno is not similarly situated to her.

Accordingly, Micro Center is entitled to summary judgment on Mendoza's Title VII claim because she has failed to identify a similarly situated individual who was treated more favorably than she was.

B.    Micro Center's Proffered Reason For Discharge Is Not Pretextual

In addition, and independently, Micro Center is entitled to summary judgment on Count II because Mendoza has failed to cast meaningful doubt on Micro Center's non-pretextual reason for her termination—that the company routinely terminates employees (male and female) whom it understands not to have returned to work at the end of their FMLA leave. In this regard, Micro Center offers evidence that it terminated Mendoza's employment because it believed that Mendoza had exceeded her twelve weeks of FMLA leave. (Def. SF ¶¶ 34, 37-38, 53-55; Pl. SF (D.E. 30) ¶ 5.[15]) Mendoza casts no meaningful question as to the truthfulness of this reason. Micro Center also offers unrebutted and unchallenged evidence that it has terminated thirteen employees in its Chicago store for failing to return from a leave of absence. (Def. SF ¶¶ 58-59.) Six of those terminations involved employees who were on FMLA leave and did not return to work after taking 12 weeks of such leave. (*Id.*) Three of the six FMLA leaves were medical FMLA leaves, and the other three were pregnancy related. (*Id.*) Of the employees who were terminated for failing to return from a medical FMLA leave unrelated to a pregnancy, two of the

---

[15]  Mendoza attempts to deny Micro Center's statement that if it had known that Mendoza's FMLA leave did not end until January 5, and if Mendoza had shown up for work on January 6, she would have been reinstated. (Def. SF ¶ 38.) Mendoza's denial is non-responsive and lacks evidentiary support, and thus, the Court deems Micro Center's statement admitted.

three terminated employees were male and one was female. (*Id.*)[16]

The Seventh Circuit instructs that this Court does "not sit as a superpersonnel department" that reexamines the propriety, correctness, or wisdom of any otherwise lawful personnel decision. *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 785 (7th Cir. 2004) (citation omitted). Under Title VII, "the focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Id.* at 784 (internal quotation and citation omitted). The Seventh Circuit also has instructed repeatedly that arguing about whether a company was correct or not concerning an honestly held basis for an employee's firing is "a distraction." *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 900 (7th Cir. 1999); *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997). Put differently, under Title VII, a company can be mistaken about a reason that led to an employee's termination, so long as the company's decision to terminate was not infected by sexism or bigotry.

Mendoza does not offer properly supported evidence to create a triable issue concerning whether Micro Center's articulated reason for firing Mendoza is pretextual. *See, e.g., Davis*, 368 F.3d at 784 ("[A] pretext for discrimination . . . means something worse than a business error; pretext means deceit to cover one's tracks." (internal quotations and citations omitted)); *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000) ("[Pretext] means a

---

[16] Mendoza's attempt to deny the factual assertions in Defendant's Statement of Fact 58 by stating that she "lacks the information to admit or deny the statement contained" therein is impermissible under local rules. *See, e.g.*, LR 56.1(b)(3)(A); *PXRE Reinsurance Co. v. Lumbermens Mutual Cas. Co.*, No. 03 C 5155, 2004 WL 2387637, at * 8 n.5 (N.D. Ill. Oct. 21, 2004) (Shadur, J.) (citing *McGuire v. United Parcel Serv.*, 152 F.3d 673, 675 (7th Cir. 1998)); *see also See Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("[A] general denial is insufficient to rebut a movant's factual allegations.").

dishonest explanation, a lie rather than an oddity or an error."). Mendoza's argument concerning

pretext is that Micro Center's proffered reason has no basis in fact because Micro Center admits

that her leave actually terminated on January 5, 2002. (D.E. 33 (Pl.'s Mem. of Law in Resp. to

Motion) at 9.) Mendoza does not offer evidence, however, to dispute that at the time Micro

Center terminated her employment, it believed her leave had terminated on December 31, 2001.[17]

Mendoza also points to the fact that when Micro Center learned of its mistake, it did not make

any effort to reinstate Mendoza,[18] and, instead, "created a revised document in an effort to hid

[sic] its wrongful deeds." (D.E. 33 at 10.) To the contrary, the Court finds that Micro Center's

documentation of the correct FMLA date, including sending the revised letter to Mendoza, cuts

against the notion that Micro Center was lying when it stated that it had terminated Mendoza

(albeit mistakenly, in that the termination came one day before the FMLA leave actually ended)

for being unable to work at the expiration of her FMLA leave. "Plaintiff's speculation that

[Micro Center's] alleged mistake must be a pretext is not sufficient evidence [to] sustain a claim

under Title VII." *Holmes*, 135 F. Supp. 2d at 664.

Because Mendoza has not offered evidence that creates a triable issue as to whether

---

[17] As described above, *see* note 8, *supra*, Mendoza's statement that Mendoza had earlier "reminded" Micro Center that her FMLA period ended on January 5 has no support in the record. Mendoza could not recall whether she had told Micro Center before or after January 4 that it had miscalculated the end date of her FMLA leave. (*See* Pl. Ex. A at 70.)

[18] To the extent that Mendoza is attempting to amend her wrongful discharge claim *sub silentio* to include a failure to hire (or rehire, in this case) claim, the Court would reject such an amendment as being unduly delayed and causing undue prejudice to Micro Center. (*See* Def. Ex. A (EEOC charge) (describing Mendoza's termination, but not complaining of a failure to rehire); Compl. ¶ 32 (alleging that sex was a motivating factor in Micro Center's "decision to discharge Plaintiff").) This issue is no real practical consequence, however, as Mendoza concedes that she did not reapply for her position at Micro Center. (*See* D.E. 32 (Pl. Resp. to Def. SF) ¶ 45.)

Micro Center's proffered nondiscriminatory reason for terminating Mendoza is pretextual, summary judgment is appropriate as to Count II.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is granted with respect to Count II. Defendant's motion, and Plaintiff's Cross-Motion, for summary judgment on Count I are both denied.

So ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Date: _2/8/05_____